UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JERMAINE DAVIS, )<br>)<br>Petitioner, )<br>vs. )<br>)<br>BRIAN SMITH, )<br>)<br>Respondent. ) | Case No. 2:14-cv-131-WTL-MJD |

**Entry Denying Petition for Writ of Habeas Corpus**

The petition of Jermaine Davis ("Mr. Davis") for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. IYC 13-12-0268. For the reasons explained in this Entry, Mr. Davis' habeas petition must be **denied**.

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

On December 22, 2013, Correctional Lieutenant G. Roach wrote a Report of Conduct in case IYC 13-12-0268 charging Mr. Davis with Class A offense #102, assault on another offender causing serious bodily injury. Dkt. 11-1. The Conduct Report states:

> On 12/7/13 I, Lt. G. Roach, was assigned to conduct an investigation on offender Davis, Jermaine #173645 and two other offenders assaulting offender Bennett, Garrett #238269 in West Dorm M-Unit. On 12/7/13 at approximately 6:10 pm Officer J. Lowery was conducting her Census count and observed offender Bennett in cell M-9 bleeding profusely from his face. She contacted the Dorm Sergeant to assist with the situation and offender Bennett was escorted to medical for an evaluation and for photos of his injuries. The Nurse assessed offender Bennett and determined he had extensive injuries and required to go to Hendricks County Hospital Emergency Room. The Cameras were viewed in West M-Unit from many angles determining that Offender Davis was involved in the assault on Offender Bennett. Supporting statements were also taken to confirm that he was involved. Offender Davis was escorted to segregation and placed in segregation on 12/7/13.

Also on December 22, 2013, Lt. Roach prepared a Report of Investigation of Incident which reads as follows:

> On 12/7/13 I, Lt. G. Roach, was assigned to conduct an investigation on offender's [sic] Thompson, Jerome #232105, Davis, Jermaine #173645, and Perkins, Jamel #179078 assaulting offender Bennett, Garrett #238269 in West Dorm M-Unit. On 12/7/13 at approximately 6:10 pm Officer J. Lowery was conducting her Census count and observed offender Bennett in cell M-9 bleeding profusely from his face. She contacted the Dorm Sergeant to assist with the situation and offender Bennett was escorted to medical for an evaluation and for photos of his injuries. The room had already been cleaned up by offender Bennett's Bunkie, offender Featherstone, Scott #231984 and offender Bennett, Marvin #203758 who was identified on camera and charged with 111/102-A Assisting with the assault. Nurse T. Jordan assessed offender Bennett and determined he had extensive injuries and required to go to Hendricks County Hospital Emergency Room.
>
> Once he arrived at Hendricks County the emergency room staff determined that offender Bennett had multiple face fractures, he was vomiting blood, had a possible ruptured kidney. He was then taken by ambulance to Methodist Hospital because the care he needed was beyond the scope of Hendricks County's capabilities.

>  Offender Bennett underwent surgery at Methodist to fix his multiple fractures in his face and was returned back to Plainfield Correctional Facility on 12/12/13. At the time of this report he is still undergoing medical procedures in the infirmary.
>
>  On 12/7/13 the cameras from M-unit were reviewed from multiple angles.
>
>  Offender Bennett was observed on the M-Unit Dayroom camera outside his cell at approximately 6:03 pm with no apparent injuries. Soon after offender Bennett returns to his cell and offender's [sic] Thompson, Davis, and Perkins were observed on the West Dorm Officers desk camera standing next to the microwave at the same time offender Bennett entered his cell. These offenders ran towards cell #9 and the camera M-Unit 2nd Range 2 observed three individuals open the door and enter and soon after the door opens and three individuals leave the cell. At the same time that the individuals leave the cell the M-Unit Officers Desk camera captures offender's [sic] Thompson, Perkins, and Davis running away from cell 9. Officer Lowery was observed at approximately 6:07 pm coming on to the unit and stopping at cell 9.
>
>  Officer Lowery was called to the shift office to observe the cameras and identify the offenders. She confirmed that it was offender Bennett outside his room unharmed just after 6 pm. She also confirmed that three individuals running to and away from cell 9 were in fact offenders Thompson #232105, Davis #173645, Perkins #179078. See Attached statement from Officer J. Lowery.
>
>  Offender Davis, Jermaine #173645 was questioned and placed in segregation on 12/7/13. He denied any involvement in this situation. Offender Thompson was questioned again on 12/20/13 and requested to write a statement. He again denied all involvement in this situation.
>
>  After reviewing the evidence from the camera system, staff statements, offender Davis's statement, and confidential statements Offender Davis will be charged with assault as a 102-A Assault on another offender w/ serious bodily injury due to the extent of offender Bennett, Garrett #238269 injuries. See attached supporting statements.

Attached to the Report of Investigation of Incident was a statement from Correctional Officer Lowery which reads as follows:

>  On 12/7/13 I, Officer J. Lowery, called for a census count and while conducting the census count I observed Offender Bennett, Garrett #238269 bleeding excessively

from his face. I immediately requested my sergeant and the walk sergeant and his staff for a knuckle and torso check. The unit was already bunked for the census count. Offender Bennett was escorted to HSU by Sgt. Layman. I searched the trash cans on the unit for any bloody clothing that may have been discarded to no avail. A shakedown team was assembled and sent to the unit. While the shakedown team was on the unit, I went to the Shift Office to watch the camera footage with Lt. Roach hoping to identify any offenders who were involved. We watched the cameras from several angles. I was able to identify Offender Perkins #179078 as he was running away from the room and up the stairs as he had removed his sweatshirt, and quickly returned back downstairs without his sweatshirt in his hand. I was also able to identify Offender Featherstone #231984 as one of the offenders walking away from the room and toward the stairs holding something white and then returning back to the room still carrying the article. I was able to identify Offender Bennett exit the room under his own power and stand briefly in the dayroom before going back into his cell, still under his own power. I was able to identify Offender Thompson #232105 and Offender Davis #173645 as they appeared to be running to and from the room immediately before and right after the alleged incident occurred. Offender Poindexter #232103 was seen loitering in the area nearest the microwave; though he was off camera briefly, his location during the incident was unable to be determined in the camera footage.

On December 23, 2013, Mr. Davis was notified of the charge of offense #102 and served with the conduct report, the incident report, and the notice of disciplinary hearing screening report. Mr. Davis was notified of his rights and pled not guilty. Mr. Davis requested witness statements from offenders Jamel Perkins, Jerome Thompson, and Garrett Bennett. Mr. Davis also requested the video from the M Dayroom camera from 5:45 p.m. to 6:30 p.m., which he claimed would show he was on the phone and then returned to his cell.

On December 29, 2013, a hearing was conducted and the hearing officer found Mr. Davis guilty of offense #102. At the hearing, Mr. Davis stated, "I was on the wall phone. They must have me mixed up with someone else. I was only in there for 2 days." Dkt. 11-3. In making the determination of guilt, the hearing officer considered staff reports, Mr. Davis's statement, witness statements, video review, and the report of investigation. Based on the hearing officer's

recommendation the following sanctions were imposed: 360 days in disciplinary segregation, a 360 day deprivation of earned credit time, and a demotion from credit class 2 to credit class 3. The hearing officer recommended the sanctions because of the seriousness and nature of the offense, the offender's attitude and demeanor during the hearing, and the degree to which the violation disrupted and endangered the security of the facility.

Mr. Davis' appeals through the administrative process were denied. He now seeks relief pursuant to 28 U.S.C. § 2254, arguing that his due process rights were violated.

### III.  Analysis

Mr. Davis' claims for habeas relief are summarized as follows: 1) he was not given 24 hours' notice of his hearing; 2) he was denied evidence he requested; 3) there was insufficient evidence to support his conviction; and 4) the hearing officer was not fair and impartial.

Mr. Davis first argues that the hearing officer did not give him 24 hours to defend his case. He was given notice of the conduct report on December 23, 2013. Dkt. 11-2. He did not waive the 24 hour notice requirement. The hearing was conducted on December 29, 2013, six days after he was notified of the charge. There was no due process violation with respect to the amount of time Mr. Davis was given to prepare for his hearing.

Mr. Davis next claims that he was denied evidence consisting of telephone records which he alleges he requested at both screening and the disciplinary hearing. There is no evidence in the record, however, indicating that he asked for telephone records either at screening or during the disciplinary hearing. The record reflects that at screening Mr. Davis requested witnesses and evidence from the dayroom camera. Dkt. 11-2. There is no evidence showing that Mr. Davis asked for telephone records at the hearing, but even if he did, the hearing officer would have had the authority to deny that request. *See Portee v. Vannatta,* 105 Fed.Appx. 855, 857 (7th Cir. July 20,

2004) (requests for evidence made the day of the hearing are not timely); *Sweeney v. Parke,* 113 F.3d. 716, 719 (7th Cir. 1997), *overruled on other grounds by White v. Indiana Parole Bd.,* 266 F.3d 759, 765-66 (7th Cir. 2001) (same).

Mr. Davis further argues that he was not given a copy of the witness statement of Officer Lowery. This statement was attached to the conduct report, a copy of which Mr. Davis was provided. Even if the witness statement was somehow not provided, Mr. Davis has not shown any prejudice from this omission. The conduct report itself provided the facts underlying the charge. Without showing how having a copy of the witness statement would have changed the outcome of the hearing, this claim lacks merit. *See Jones v. Cross*, 637 F.3d 841, 846 (7th Cir.2011) (absent prejudice, any alleged due process error is harmless error).

Mr. Davis also argues that he did not receive the "video surveillance result report." He claims that "the video clearly showed me on the phone at the time of the incident. . . ." Dkt. 2, p.7. The video footage requested by Mr. Davis was reviewed, however, and the summary states that the viewing officer "could at no time observe if Davis was or was not on the phone." Dkt. 11-3. Due process only requires access to evidence that is exculpatory, and then only if disclosure would not "unduly threaten institutional concerns." *Jones v. Cross,* 637 F.3d at 847 (internal quotation omitted); *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride,* 81 F.3d 717, 721 (7th Cir. 1996). Here, the video summary did not contain evidence that would exculpate Mr. Davis. Thus, there was no due process violation. Even if there were a due process error, Mr. Davis has not shown how the outcome would have been different if he had reviewed the written summary.

Mr. Davis next challenges the sufficiency of the evidence. He alleges that Officer Lowery, the staff witness who identified him and others as the offenders who were involved in the assault, was under investigation at the same time for engaging in trafficking and sexual acts with prisoners. Mr. Davis further alleges that her employment was terminated soon after the conduct report in this case was written. He questions the integrity of her statements based on these alleged circumstances. The "some evidence" evidentiary standard in this type of case is much more lenient than "beyond a reasonable doubt" or even "by a preponderance." *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (hearing officer in prison disciplinary case "need not show culpability beyond a reasonable doubt or credit exculpatory evidence."). The "some evidence" standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "In reviewing a decision for 'some evidence,' courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence…." *Id.* (internal quotation omitted). There is no evidence supporting Mr. Davis' allegations about Officer Lowery's credibility. Nonetheless, as noted, this Court cannot reweigh the evidence or evaluate witness credibility. *Hill,* 472 U.S. at 455. In addition, the investigation was conducted by Lt. Roach, not Officer Lowery. Here, the evidence shows that Mr. Davis was one of the offenders who entered and exited the cell around the time of the assault. That evidence is sufficient.

Mr. Davis' final claim is that the hearing officer was not impartial because he refused to provide him copies of staff witness statements and a video surveillance report. Inmates are entitled to an impartial decision-maker. A prison official who is "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof," may not adjudicate those charges. *Piggie v. Cotton,* 342 F.3d 660, 667 (7th Cir. 2003). "Adjudicators are

entitled to a presumption of honesty and integrity." *Id.* at 666. "[T]he constitutional standard for impermissible bias is high." *Id.* Mr. Davis does not assert that the hearing officer had any disqualifying personal involvement in or knowledge of the circumstances involved in the conduct report. There is no evidence of bias in the proceedings.

Mr. Davis was given notice and had an opportunity to defend the charge. The hearing officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Mr. Davis' due process rights.

### IV.  Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceedings. Accordingly, Mr. Davis' petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  10/9/15

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Jermaine Davis, 4219 Kenneth Ave., Apt. 4, Indianapolis, IN 46226

Electronically Registered Counsel